This is not the case of ordinary injunction to stay proceedings on an execution, after the right of the defendant has been established by a judgment. The plaintiff alleges that being pressed by executions, in order to prevent a sale of his property, he applied to the defendant to aid him in raising the money, and take a lien on the property. The defendant agreed to pay off the executions, provided he would save him harmless by including the amount for which he was liable as plaintiff's surety. Accordingly the plaintiff executed a deed absolute on its face, and the defendant commenced writing a paper to show that the plaintiff was to have the privilege of redeeming his property, but afterwards, on various pretenses, refused to sign it, saying the plaintiff must take his word, and insisting that the deed should be absolute on its face. So, the plaintiff avers, the deed was obtained by taking undue advantage of him by reason of his necessities; and seeks to set up his equity to redeem on paying principal and interest.
In aid of this primary equity, the plaintiff prays that the defendant may be enjoined from exposing his property to public sale, or otherwise making way with it, until his equity to redeem can be established; (558) and he puts his right to an injunction on the ground that if the property is sold, as contemplated by the defendant, he will be turned out of his house and home; and his property, consisting in a great part of horses, mules, corn, wheat, hay, hogs, sheep, farming utensils, and other articles of the kind, will be scattered all through the country, so as to make it impossible ever to regain it; and so the loss will be irreparable, and the very purpose of his bill, should he succeed in establishing his equity, will be defeated.
The defendant insists that he made an absolute purchase of all of the property, and denies that there was any understanding that the plaintiff should be at liberty to redeem.
It is certain that if the property is exposed to public sale and scattered through the country it will be impossible to reclaim it specifically, and the plaintiff's primary equity would be thereby in a great measure defeated. So the question of injunction is of a specialnature, and must be treated and considered in the character of a sequestration, which the court will not remove until the hearing of the cause, when it appears by the bill and answer that the claim of the plaintiff is probably well *Page 363 
founded, and is not merely frivolous and vexatious; for as the defendant is secured by the injunction or sequestration bond, the court having the property under its control, will take care of it, so that it may be subject to its final decree.
In cases like this under consideration, equity assumes jurisdiction on the principles of giving effect to the agreement of the parties; and when it appears that the intention was to secure the payment of money, and the transaction has been made to assume the form of an absolute conveyance by fraud, ignorance, accident, or advantage taken of a needy man, the court will not be trammeled by the form, and will give effect to the intention. In illustration: A. borrows money, and to secure its payment executes a deed, to be void provided the money and (559) interest are paid by a given day; otherwise, the estate to be absolute. The money is not paid and the estate becomes absolute at law; but a court of equity will interfere and allow the property to be redeemed, on the ground that it was not the intention of the one to sell, or of the other to buy; but the deed was given as a security for the money, and it is against conscience for the creditor to insist on keeping the property. So in a case like the present, if it was not the intention of the one to sell, or of the other to buy, and the actual intention was to let the property stand as a security, equity will, as between the parties, give effect to the intention, by disregarding the form which the transaction has been made to assume, and convert the deed, although absolute on its face, into a security; it being against conscience for the creditor to insist upon keeping the property absolutely.
In our case, this Court is of opinion that the bill and answer show "probable cause" in support of the plaintiff's equity. In fact, the admission of the defendant, taken in connection with the circumstances of the transaction, would seem to make out the plaintiff's case, although in respect to that question we are not at liberty in this stage of the proceeding to deliver our opinion.
The deed conveys the plaintiff's land, horses, mules, sheep, hogs, corn, wheat, hay, farming utensils, etc. — just such articles as are usually contained in a deed of trust. The defendant does not allege that the property was valued separately, or that the price (as he considers it) was fixed on in reference to the value of the property; but the amount inserted in the deed had reference merely to the amount of the executions, and the amount for which he was liable as surety. This is inconsistent with the idea of an absolute purchase. It is not usual for a man to wish to sell, or for one to wish to become the purchaser of, such an infinite or indefinite variety of articles by the wholesale. Indeed, it is evident that the plaintiff did not wish to sell, and the defendant admits he did not wish to buy. All he wanted was to be saved harmless. (560) *Page 364 
He admits that he did commence writing an instrument to show that the plaintiff was to have the right to redeem, but on reflection concluded not to do it, and thereupon the plaintiff delivered the deed to him; the plaintiff retained possession of the property. The defendant admits that he afterwards repeatedly offered to let the plaintiff have the property back, provided he was indemnified, as all he wanted was to be "saved harmless," which is the very thing the plaintiff now offers to do, and which he has done by the injunction bond; unless the defendant is at liberty to insist on the time; but in such matters it is a maxim of equity that "time is not of the essence of the contract." This is the foundation of the doctrine concerning equities of redemption in mortgages and all dealings of that nature.
There is still another view of the case: Can any one be made to believe that the plaintiff would have executed the deed if he had supposed that the defendant could come the next day and turn him out of house and home and scatter all the accumulations of his plantation to the winds, by exposing it to public sale? That was the very thing he desired to prevent, and its prevention the sole purpose for which he asked the aid of the defendant. This was well known to the defendant. So if it was his intention at the time not to allow the plaintiff to redeem, he practiced a fraud by concealing it; and if he intended at the time to allow him to redeem, he cannot now in conscience refuse to do so.
So, taking it either way, the defendant procured the execution of the deed by a positive fraud, or else he procured it by taking underhand advantage of the necessities of the plaintiff, the pressure of which induced him to put himself in the power of the defendant and trust to his (561) good conscience; and the defendant cannot be allowed in equity to disregard the trust reposed in him and set himself up as an absolute purchaser, and thereby give to the transaction the result of doing the very thing which he well knew it was the plaintiff's object to avoid, viz., an absolute sale of the property.
There is error in the decretal order dissolving the injunction. Let this opinion be certified to the court below, to the end that the order be reversed, and the injunction continued over until the hearing.
Cited: High v. Lack, 62 N.C. 179; Williams v. Moore, id., 212. *Page 365